UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID ALONZO WRIGHT,

Petitioner,

-vs-                                                    Case No.  8:03-cv-1698-T-17EAJ

JAMES V. CROSBY, JR.,

Respondent.
_____

### ORDER

This cause is before the Court on Petitioner David Alonzo Wright (Wright's) 28 U.S.C. § 2254 petition for writ of habeas corpus;  Respondent's response to the petition; and Wright's reply to the response.   Wright challenges his convictions and sentences entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida. Specifically, Wright challenges his convictions for aggravated battery on a person 65 years of age or older, and robbery (circuit case number 96-1897); throwing a deadly missile (circuit case number 96-1898); and robbery (circuit case number 96-3009). Wright is currently serving 30 years on each of the robbery convictions and the throwing a deadly missile conviction pursuant to Florida's habitual violent felony offender statute (HVFO).  § 775.084 (4) (B) , Fla. Stat. (1996) . Wright is serving a life sentence on the aggravated battery conviction with a 15-year mandatory minimum term pursuant to HVFO. All sentences are concurrent.

BACKGROUND

Wright was charged by information with throwing a deadly missile in case no. 96-1989. By separate information, the State charged Wright in case no. 96-1897 with robbery and aggravated battery upon a person 65 years of age or older. In a subsequent separate information, Wright was charged with robbery in case no. 96-3009. (Exhibit 1).

Wright, who was represented by Claudette Wells, Esq., entered open guilty pleas to all charges on August 21, 1996.  Prior to sentencing, Wright made an oral pro se motion to withdraw his pleas.   Attorney Wells moved to withdraw as counsel based on Wright's assertion that there was "conflict" between them. The state trial court appointed conflict counsel Aldo Ojeda, Esq., and at an October 25, 1996, sentencing hearing, Attorney Ojeda stated that there was no legal basis for requesting withdrawal of Wright's pleas. Wright was sentenced to 30 years on each of the robbery convictions and the throwing a deadly missile conviction, and life in prison on the aggravated battery conviction with a 15-year mandatory minimum term pursuant to HVFO. The trial court did not orally pronounce the 15-year minimum mandatory on the life sentence; however that part of the sentence was reflected in the written order.  On October 28, 1996, the trial court conducted a hearing at which the court orally pronounced the 15-year mandatory minimum sentence.

In his direct appeal (Exhibit 2), Wright asserted the following issues through counsel John C. Fisher, Esq.:

I. THE TRIAL COURT ERRONEOUSLY REQUIRED THE APPELLANT TO PROCEED PRO SE ON HIS MOTION TO WITHDRAW HIS PLEA, FAILED TO CONDUCT AN ADEQUATE INQUIRY INTO THE APPELLANT'S MOTION TO WITHDRAW HIS PLEA, AND FAILED TO CONDUCT AN

-2-

ADEQUATE PLEA COLLOQUY TO ESTABLISH THE VOLUNTARINESS OF THE APPELLANT'S OPEN PLEA.

II. THE TRIAL COURT IMPROPERLY ADDED A FIFTEEN-YEAR MANDATORY TERM TO THE APPELLANT'S LIFE SENTENCE AS A HABITUAL VIOLENT FELONY OFFENDER.

The State filed its answer brief (Exhibit 3), and the state district court of appeal per curiam affirmed, citing Gardner v. State, 699 So. 2d 798 (Fla. 4th DCA 1997) . Wright v. State, 720 So. 2d 526 (Fla. 2d DCA 1998) [table].  (Exhibit 4).  Following denial of Wright's pro se motion for rehearing, mandate issued October 6, 1998. (Exhibit 5).

On July 1, 1999, Wright filed a pro se Rule 3.850 motion for post-conviction relief (Exhibit 6: R 60-103), alleging five grounds:

I. FAILURE OF COUNSEL (WELLS) TO ADVISE DEFENDANT OF POSSIBLE ALTERNATIVE DEFENSE OF VOLUNTARY INTOXICATION.

II. FAILURE OF COUNSEL (WELLS) TO LOCATE, INVESTIGATE, DEPOSE, AND/OR SUBPOENA WITNESS[1] [sic] WHO WOULD HAVE TESTIFIED THAT DEFENDANT WAS EXTREMELY INTOXICATED ON COCAINE PRIOR TO, AND DURING THE TIMES WHEN OFFENSES WERE COMMITTED.

III. THE DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHICH RENDERED HIS GUILTY PLEA INVOLUNTARY, BY COUNSEL'S (WELLS') FAILURE TO PROPERLY ADVISE AND ERRONEOUSLY INFORMING HIM ABOUT THE CONSEQUENCES AND CONDITIONS OF HIS SENTENCE.[2]

---

[1] Wright named (1) Sonja Wright, his former wife; (2) Gladys Henderson, his former mother-in-law; (3) Morris Wright, his brother; (4) Dorian Jones, his brother; (5) Lena Jones, his friend; and (6) Georgia Mae Wright, his mother. He stated that these witnesses "would have testified about his excessive cocaine use and addiction."

[2] Wright alleged that Wells gave him and the trial court "erroneous information" that he could receive a life sentence on the aggravated battery charge with a "discretionary" 15-year mandatory minimum, and that he could receive 30-year sentences for the remaining counts with "discretionary" 10-year mandatory minimum sentences. He stated that Wells and the trial court also failed to advise him that if he was sentenced as HVFO, (continued...)

-3-

IV. THE TRIAL COURT ERRED IN NOT ADVISING THE DEFENDANT OF THE FULL CONSEQUENCES OF HIS PLEA TO A HABITUAL VIOLENT FELONY OFFENDER SENTENCE, IN VIOLATION OF <u>ASHLEY V. STATE</u>, 614 So. 2d 486 (Fla. 1983), THUS RENDERING HIS PLEA INVOLUNTARY.

V. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY (CONFLICT COUNSEL OJEDA'S) FAILURE TO EXERCISE DUE DILIGENCE IN HIS TASK OF ESTABLISHING A REASON FOR THE DEFENDANT TO WITHDRAW HIS GUILTY PLEA PRIOR To SENTENCING.

On May 26, 2000, the state trial court  ordered the State to respond to Grounds I-IV, and summarily denied Ground V. (Exhibit 6: R 176-84).   After the State filed its Response, the state trial court appointed Daniel Hernandez, Esq., to represent Wright and held an evidentiary hearing on March 15, 2001.  (Exhibit 6: R 117-46, 150, 185-86). Following the evidentiary hearing, on May 1, 2001, the state trial court issued a written order denying Grounds I-IV. (Exhibit 6: R 170-309, 330-82).

On January 31, 2002, Wright's appointed appellate counsel, Allyn Giambalvo, Esq., filed a brief in the district court pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting there was no meritorious argument that the state trial court committed reversible error. (Exhibit 7). Wright thereafter filed a pro se brief alleging error in the state trial court's denial of the five issues raised in his Rule 3.850 motion.  (Exhibit 8). The State filed its answer brief, (Exhibit 9), and on March 21, 2003, the state district court of appeal per curiam affirmed the denial of relief.  <u>Wright v. State</u>, 847 So. 2d 477 (Fla. 2d DCA 2003)

---

[2](...continued)
he would be ineligible for early release credits.

[table]  (Exhibit 10).  On May 6, 2003, the state district court of appeal denied Wright's motion for rehearing, and mandate issued on June 6, 2003.  (Exhibit 11).

Wright then timely filed the present federal habeas corpus petition raising three grounds for relief. In the first ground, Wright complains of ineffective assistance of counsel, raising four sub-claims involving two attorneys.  In his second ground, Wright asserts that his federal due process rights were violated when the state trial court failed to engage in an adequate plea colloquy. In his final ground, Wright raises a double jeopardy argument with respect to his sentence on the aggravated battery conviction.

STANDARDS OF REVIEW

Because Wright filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this Petition.

**A.**

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001).  "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 124 S.Ct. 7, 10 (2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362,

405-06 (2000)). <u>See</u> <u>also</u> <u>Price v. Vincent</u>, 123 S.Ct. at 1853; <u>Lockyer v. Andrade</u>, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10; <u>Parker v. Secy of Dept. of Corrections</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply.  <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000).  The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable.  <u>Lockyer v. Andrade</u>, 538 U.S. at 75-77; <u>Williams</u>, 529 U.S. at 409-10; <u>Penry v. Johnson</u>, 532 U.S. at 791-792; <u>Woodford v. Visciotti</u> 537 U.S. 19, 25 (2002); <u>Mitchell v. Esparza</u>, 124 S.Ct. at 11-12; <u>Price v. Vincent</u>, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See <u>Holland v. Jackson</u>, 124 S.Ct. 2736, 2737-2738 (2004) (citing <u>Yarborough v. Gentry</u>, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); <u>cf. Bell v. Cone</u>, 535 U.S. at 697, n. 4  (declining to consider

evidence not presented to state court in determining whether its decision was contrary to federal law).

**B.**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also, Henderson v. Campbell, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Snowden v. Singletary, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting Duncan v. Henry,  513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing O'Sullivan, 526 U.S. at 845).  This is required even if the state

Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  O'Sullivan, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson v. Campbell, 353 F.3d at 891(quoting Judd v. Haley, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.  First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d at 892; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "'prejudice,"  Wright must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."   Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152,

170 (1982). Wright must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson v. Campbell, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Henderson v. Campbell, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson v. Campbell, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523 U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The Schlup Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence -- that was not presented at trial.  <u>Schlup</u> 513 U.S. at 324.  This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." <u>Ward v. Cain</u>, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

<u>No Presumption that State Court Ignored Its Procedural Rules</u>

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented.  <u>See Coleman</u>, 501 U.S. 722, 735-36 (1991);  <u>Kight v. Singletary</u>, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); <u>Tower v. Phillips</u>, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

**C.**

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Henderson</u>, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court

(subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

**D.**

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue were raised only as a state law claim in state court. Anderson v. Harless, 459 U.S. 4, 6-8 (1982).

DISCUSSION

Ground One

Wright raises four sub-claims of ineffective assistance of counsel:  1) failure to inform him of the availability of the voluntary intoxication defense; 2) failure to locate investigate, depose, and subpoena defense witnesses who would testify regarding his cocaine addiction in support of a voluntary intoxication defense; 3) failure to inform him that an HVFO sentence would exclude the possibility of early release credits; and 4) failure of conflict counsel to "identify" legal reasons for Wright to move to withdraw his plea prior to sentencing, and failure of conflict counsel to inform him that the aggravated battery victim's age presented a possible defense to that charge. The state trial court held an evidentiary hearing on the first three sub-claims and summarily denied that portion of Wright's fourth sub-claim raised in the Rule 3.850 motion, stating:

In grounds one, two, and three of his Motion Defendant alleges ineffective assistance of counsel. To have a facially valid claim of ineffective assistance of counsel, Defendant must meet the two-prong Strickland test (deficient performance plus prejudice). In that test, Defendant must "(a) state specific act(s) or omission (s) which constitute the alleged ineffectiveness, and (b) show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

In ground one, Defendant alleges ineffective assistance of counsel for failing to advise him of the alternative defense of voluntary intoxication. On March 15, 2001, both Defendant and counsel, Ms. Claudette Wells, testified with respect to this allegation.

Defendant testified that at the time he entered his plea Ms. Wells had not discussed with him the possibility of using the defense of voluntary intoxication. Defendant stated that he had told Ms. Wells that at the time the offense was committed he was extremely under the influence of drugs. Ms. Wells testified that she considered voluntary intoxication as a possible defense because Defendant on more than one occasion had a real drug problem. Ms. Wells further testified that Defendant never told her that he had used drugs on the date he was charged with committing these crimes. Although Ms. Wells considered a voluntary intoxication defense, she testified that she did not believe Defendant had a viable defense because he never made any indication that he had been under the influence at that time and that Defendant further indicated whenever he was under the influence he turned into a different person. Therefore, Defendant's premeditated actions on that day do not support the defense of voluntary intoxication.

Based on the foregoing the Court concludes that after having properly considered the defense of voluntary intoxication, Ms. Wells based on her experience and knowledge of the law believed that voluntary intoxication was not a viable defense in this case.  As such, Defendant fails to meet the deficient performance of the Strickland test and no relief is warranted on this ground.

In ground two, Defendant alleges ineffective assistance of counsel for failing to locate, investigate, and/or subpoena witnesses who would have testified that Defendant was extremely intoxicated on cocaine prior to, and during the times when the offenses were committed. Sonja Henderson, Defendant's ex-wife, testified with respect to this allegation. Ms. Henderson testified that during the course of the day when the offenses were committed

-13-

she did not observe Defendant take any drugs. Ms. Henderson further testified that Defendant did not appear to be under the influence of any drugs or alcohol at the time the robbery occurred. The only other witness presented to testify on Defendant's behalf , Monica Blair, was in Miami at the time the offenses occurred. [note 1: The record reflects that Monica Blair was not listed as one of the witnesses counsel was deficient for not investigating in his Motion.] Although Ms. Blair stated that she had knowledge of Defendant's drug problem she testified that she did not know whether or not he had taken drugs on the day that he committed these crimes. Based on the foregoing, the Court concludes that Defendant has failed to present any witnesses who would have testified as to Defendant's intoxicated state at the time of the offense. As such, Defendant fails to meet the second prong of the Strickland test and no relief is warranted on this ground.

In ground three, Defendant alleges ineffective assistance of counsel for failing to properly advise Defendant about the consequences of his plea. Defendant contends that [sic] continuously provided him and the Court with erroneous information concerning the sentence Defendant was to receive. Specifically, Defendant claims that counsel never advised him that if he was sentenced as a habitual violent felony offender (HVFO) he would be ineligible for early release credits. Both Defendant and Ms. Wells testified with respect to this allegation. Defendant testified that Ms. Wells never discussed his ineligibility for early release credits. Defendant further testified that although he received notice of the State's intent to treat him as a habitual violent felony offender and he knew that it   meant "double," he was unaware of the consequences. Contrary to Defendant's testimony, Ms. Wells testified that she advised Defendant about the loss of gain time and the minimum mandatory as it relates to being sentenced as a habitual [violent] felony offender. Based on the foregoing, the Court concluding that the testimony of counsel to be more credible, finds that Defendant fails to meet the deficient performance of the Strickland test. As such, no relief is warranted on this ground.

(Exhibit 6: R 170-74).

In its order summarily denying that portion of Wright's fourth sub-claim raised in the

Rule 3.850 motion, the state trial court made the following findings:

. . . Defendant alleges ineffective assistance of counsel for failing to exercise due diligence to find a "legal basis" for Defendant to withdraw his plea. During the sentencing hearing the following exchange took place:

-14-

THE COURT: Mr. Ojeda, you indicated on previous court dates, sir, that your client had wished to withdraw his pleas of guilty. I caused a transcript to be prepared for you, sir. And I think we gave you a copy of the transcript.

And I'm going to ask at this time, sir, do you have any legal basis as to why this Court should not proceed with sentencing at this time?

MR. OJEDA: Your Honor, I did have the opportunity to review the transcript, the Plea that came along with it. I have had the opportunity to do some research into this matter. And I have also sought the opinion of a couple of other attorneys.

And at this time, Judge, there's no legal basis that I can bring to the Court to ask the Court to allow Mr. Wright to withdraw ]his previously entered plea.

The record reflects, contrary to Defendant's allegation, that counsel did exercise due diligence but was unable to find a "legal basis" within which to allow Defendant to withdraw his plea. Since Defendant fails to prove deficient performance, no relief is warranted on this ground.

(Exhibit 6: R 177-78, 182-83). It is well established that the Supreme Court's decision in

Strickland is the "controlling legal authority" to be applied to ineffective assistance of

counsel claims. Williams, 529 U.S. at 406 (O'Connor, LT., concurring).   Wright must show

both incompetence and prejudice to succeed on a claim of ineffective assistance of

counsel.  In the present case, the state court correctly identified the Strickland standard in

evaluating Wright' s claim of ineffective assistance of counsel, concluding that Wright had

not met his burden of establishing that his attorneys' actions were deficient in sub-claims

one, three, and that portion of sub-claim four raised in the motion. See e.g., Chandler v.

United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000)(en banc)(opining that for a

petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take").

With respect to Wright's second sub-claim, the state trial court concluded that Wright had not met his burden of establishing prejudice under Strickland.  To meet the second prong of the Strickland test, Wright "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 690. To show prejudice in tile context of a guilty plea, Wright must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and [would have] insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).  "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id.

Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United states Supreme Court] on a question of law or if the state court decides a case differently than that Court has on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13 (O'Connor, J., concurring). "A state court's decision that applies the correct legal rule would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington v. Moore, 314 F. 3d 1256, 1260 (11th Cir. 2001) (citing Williams, 529 U.S. at 404-06).  Here, the state court, by correctly identifying Strickland as the controlling legal authority on claims of ineffective assistance of counsel, did not reach

an opposite conclusion from the Supreme Court on a question of law. Id. Further, Wright does not cite to any decision in which the United States Supreme Court, faced with materially indistinguishable facts, reached a decision different from that of the state court in this case. Id.

Under the 'unreasonable application' clause,  a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 414  (O'Connor, J., concurring). The federal court should consider whether the state court' s application of the law was objectively unreasonable. Wellington, 314 F.3d at 1261.

In his first sub-claim, failure to inform him of the availability of the voluntary intoxication defense, the state trial court determined that "Ms. Wells based on her experience and knowledge of the law believed that voluntary intoxication was not a viable defense in this case."  In Darden v. Wainwright, 477 U.S. 168 (1986), the high Court ruled that counsel cannot be  adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.  Ms. Wells testified that she considered and rejected a voluntary intoxication defense because Wright did not tell her that he was intoxicated at the time of the offenses. The state court's determination that Wright had failed to meet the Strickland deficiency prong was not objectively unreasonable. Wellington, 314 F.3d at 1261.

With regard to Wright's second sub-claim, failure to locate, investigate, depose, and subpoena defense witnesses to testify in support of a voluntary intoxication defense, the

state trial court determined that Wright had "failed to present any witnesses who would have testified as to [his] intoxicated state at the time of the offense." In fact, Wright presented one witness who affirmatively stated that Wright did not appear to be intoxicated at the time of the offenses and that she had not observed Wright consume any intoxicating substances at or near the time of the offenses. He presented another witness who resided in a different city and could not state whether or not Wright was intoxicated at the time of the offenses. Under these circumstances, the state court's determination that Wright had failed to meet the Strickland prejudice prong was not objectively unreasonable. Wellington, 314 F.3d at 1261.

As to Wright's third sub-claim, failure to inform him that an open plea with the possibility of HVFO sentencing status would render him ineligible for early release credits, the state trial court opined that Wright had not met the deficiency performance prong under Strickland. The state trial court found Wright's counsel to be the more credible witness; counsel testified that she would have advised Wright about the loss of gain time and the minimum mandatory as it relates to being sentenced as a HVFO. The state trial court's determination that Wright had failed to meet the Strickland deficiency prong was not objectively unreasonable. Wellington, 314 F.3d at 1261.

A portion of Wright's fourth sub-claim was summarily denied by the state court based upon a review of the court file. Wright, in his Rule 3.850 motion, argued that conflict counsel, Mr. Ojeda, should have "identified" as legal bases for withdrawal of his plea that 1) Ms. Wells had "coerced" Wright into entering the plea; and 2) Ms. Wells misadvised Wright regarding his potential HVFO sentence. The state trial court found conflict counsel

-18-

had exercised due diligence in trying to identify a legal basis upon which Wright could seek to withdraw his guilty plea: counsel had reviewed the transcript of the plea colloquy, had reviewed the plea agreement, had performed legal research, and had conferred with other attorneys on the question. The state trial court found that counsel's performance was not deficient under Strickland, and such a determination, under these circumstances, was not objectively unreasonable. Wellington, 314 F.3d at 1261.

Furthermore, Wright's allegations regarding Mr. Ojeda's failure to "identify" the fact that Ms. Wells had not informed Wright of the possible defense of the age of the aggravated battery victim constitutes a new assertion not raised in his Rule 3.850 motion. It does not suffice that Wright presented somewhat similar allegations in his Rule 3.850 motion.  See Duncan v. Henry, 513 U.S. 364 (1995). The courts of Florida must be given an opportunity to consider the Wright's legal theory of constitutional deficiency and the factual basis for that theory. Picard v. Connor, 404 U.S. 270, 277 (1971).

Wright's new factual assertions in support of his fourth sub-claim constitute new allegations of ineffectiveness of counsel which are procedurally barred by the two-year limit of Rule 3.850, Whiddon v. Dugger, 894 F.2d 1266 (11th Cir.) (recognizing and applying two-year bar of Rule 3.850), cert. denied, 498 U.S. 834, (1990)), and by the state's successive petition doctrine.  See e.g., Pope v. State, 702 So. 2d 221, 223 (Fla. 1997) (successive post-conviction relief motions filed after the expiration of the time limit must be based on newly discovered evidence).  If a petitioner asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992);

Jackson v. Herring, 42 F.3d 1350, 1355 (11th Cir.),  reh'g denied, 51 F.3d 1052 (11th Cir. 1995).

When a petitioner has defaulted his claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation, or that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722 (1991). Such a showing has not been made in this case.

Ground one does not warrant habeas corpus relief.

Ground Two

Wright asserts that the state trial court violated his constitutionally protected due process rights by its failure to 1) inform him of the elements of the charges against him; 2) ascertain that he had been informed of available defenses; and 3) inform him of all the consequences of being sentenced as a HVFO.  On direct appeal, Wright raised as an issue the state trial court's failure to 1) confirm that Wright was aware that a HVFO sentence could render him ineligible for programs affecting early release; and 2) ensure that Wright knew he would waive the potential defense that the aggravated battery victim was injured as Wright was trying to leave, presumably negating the "serious bodily injury" element of the charge.

In his Rule 3.850 motion, Wright complained that the trial court failed to 1) inform Wright that, if the court sentenced him as a HVFO, there would be mandatory minimum terms involved; and 2) inform Wright of his ineligibility for early release credits. Thus,

Wright has never raised in the state trial court a claim that the state trial court failed to advise him, at the plea colloquy,  of the elements of the charges against him.  Therefore, this portion Wright's claim is procedurally barred, and Wright has not shown cause or prejudice to overcome the bar,  or that a fundamental miscarriage will result if the merits of this claim are not addressed. Coleman, 501 U.S. at 722.

Furthermore, Wright fails, in ground two, to make the threshold showing of entitlement to relief pursuant to 28 U.S. C.  §2254 (d).  Wright fails to show that the state decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or the state court's determination of facts was unreasonable in light of the evidence.  28 U.S.C. § 2254 (d).

In the context of a guilty plea, due process is satisfied if a defendant understands the charges against him, understands the consequences of the plea, and voluntarily chooses to plead guilty without being coerced to do so.  Stano v. Dugger, 921 F.2d 1125 (11th Cir. 1991), cert. denied, 502 U.S. 835 (1991). In determining whether these safeguards have been met, a state trial court judge must necessarily rely on a defendant's statements when entering the plea in ultimately determining whether the plea was voluntary."[R]epresentations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the pleas, constitute a formidable barrier in any subsequent collateral proceedings.   Solemn declarations in open court carry a strong presumption of verity."  Blackledge  v. Allison, 431 U.S. 63, 73-74 (1977).

The state court record in this case, particularly the transcript of the plea hearing and Wright's written plea form signed by Wright and his attorney, establish that the above-

recited due process requirements were satisfied. (Exhibit 1 [See R 71 for written plea form]). The plea form states that Wright understood he was pleading "open" with no agreement as to what sentence he would receive. It lists the maximum penalty for each charge, delineating what Wright's sentence would be with and without the HVFO status. Wright certified that he entered the plea "freely and voluntarily" and that he had discussed the charges with his attorney, including the maximum possible and mandatory minimum penalties and possible defenses, and that he was satisfied with his attorney's representation.

At the plea hearing, the state trial court judge made it clear that he was not agreeing to "thirteen years," and wanted to hear from Wright's victims prior to determining the sentence. The court stated, "So what are we going to do? Enter an open plea and I'm going to hear from the victims or are we going to go to trial? " Wright's attorney expressed "concern" regarding Wright's entering an open plea because "on these type of charges he's facing a lot of time." The record shows that the state trial court allowed Attorney Wells an opportunity to confer again with Wright. Thereafter, Wells informed the state trial court, "Mr. Wright is going to be entering an open plea of guilt in his best interest in all three of these cases." Wright was sworn. (Exhibit 1:  R 157-59).

Wright stated that he was not under the influence an any intoxicants at the time of the plea, and that he understood he had been noticed as a HVFO.  The judge went through each of the four charges separately with Wright, discussing the degrees of felony, the maximum sentences, and the possible sentences under HVFO. Wright swore that he understood and entered a guilty plea to each offense.  The judge ascertained that Wright

understood the rights he was giving up by pleading. (Exhibit 1: R 159-64)    The following

colloquy took place:

>        THE COURT: I have a form in front of me entitled plea form,
> acknowledgment and waiver of rights.    Is that your  signature on the second
> page?
>
>        THE DEFENDANT: Yes, sir.
>
>        THE COURT: Did you have enough time to go over this form with your
> lawyer?
>
>        THE  DEFENDANT: Yes, sir.
>
>        THE  COURT: Did you understand it?
>
>        THE  DEFENDANT: Yes, sir.
>
>        THE  COURT. Do you have any questions about it?
>
>        THE  DEFENDANT: No, sir.

(Exhibit 1: R 164).

Then, after hearing a factual basis for the pleas, the state trial court judge found that

the pleas were "freely and voluntarily entered."  (Exhibit 1: R164-67).

Wright's declarations at the plea hearing, including that he understood his

acknowledgments in the plea form, are worthy of a "strong presumption of verity."

Blackledge, 431 U.S. at 73-74.  The record before this Court demonstrates that Wright has

failed to overcome the presumption.

The standard for determining the validity of a plea is "whether the plea represents

a voluntary intelligent choice among the alternative courses open to the defendant."  North

Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969);

Hill, 474 U.S. at 56.  Here, the state record conclusively establishes that Wright entered his plea voluntarily and with full awareness of the relevant circumstances and consequences of his plea. Accordingly, the state decision can be seen as a reasonable application of established federal law.

Ground two does not warrant habeas corpus relief.

Ground Three

Wright claims that his sentence on the aggravated battery charge violates double jeopardy principles. He claims that the trial court imposed the 15-year mandatory minimum under HVFO three days after he began serving his sentence without affording him an opportunity to withdraw his guilty plea. He argues that the "imposition" of the 15-year mandatory minimum under HVFO after he had begun serving his sentence impermissibly increased the severity of his sentence, thereby violating double jeopardy.  Wright raised this claim in his direct appeal; the appellate court per curiam affirmed, citing Gardner v. State, 699 So. 2d 798 (Fla. 4th DCA 1997).  See Wright v. Sec. Dept. of Corr., 278 F.3d 1245, 1255-56 (11th Cir. 2002).

A habeas petition grounded on issues of state law provides no basis for habeas relief. Branan v. Booth, 861 F. 2d 1507 (11th Cir. 1988)  This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of violations of federal law.  Id. (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)). "In the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures."  Wright's claim is based on whether the state court

-24-

violated state sentencing laws when it failed to orally pronounce the mandatory minimum portion of his sentence for aggravated battery until three days after the court issued the written order (which included the mandatory minimum portion). Thus, although Wright alleges a violation of federal law, it is clear that ground three is based on state law issues that are couched in terms of double jeopardy. Id. Were this Court to undertake a review of the claim, it would have to conduct an impermissible examination of Florida case law and of the Florida Rules of Criminal Procedure.

Ground three does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Wright's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Wright and to close this case.

ORDERED in Tampa, Florida, on August 11, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
David Alonzo Wright